**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO.  1:08CV160**


| | |
|---|---|
| **P. H. GLATFELTER COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **Vs.** ) | **O R D E R** |
| ) | |
| **OLIN CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |


     **THIS MATTER** is before the Court on Plaintiff's motion for a

discovery conference, to be refereed by the undersigned, pursuant to

Federal Rules of Civil Procedure 16 and 26.[1] **Motion for Discovery**

**Conference, filed July 1, 2008, at 12.**  Defendant has indicated that it

does not oppose the discovery conference itself, but it nonetheless objects

to "the relief [Plaintiff] seeks."  **Response to Motion for Discovery**

_____

[1] The Court notes that Plaintiff has made an identical, simultaneous
motion in a related case before the undersigned, *Olin Corp. v. P.H.
Glatfelter Co.*, No. 1:06CV367.  That motion is addressed in a separate
order.

**Conference, filed July 18, 2008, at 1.** For the reasons stated herein,

Plaintiff's motion is denied.

## I.  FACTUAL AND PROCEDURAL HISTORY

This lawsuit originated with a complaint filed by Plaintiff P.H.

Glatfelter Company in April 2008.  **Complaint, filed April 15, 2008.**  Citing

the Comprehensive Environmental Response, Compensation, and Liability

Act (CERCLA), also known as the Superfund statute, the complaint alleges

that Defendant Olin Corporation is responsible for certain environmental

"response costs" which Plaintiff has already incurred and anticipates

incurring in the future.  *Id.* **¶¶ 41, 42;** *see* **42 U.S.C. § 9607(a) (describing**

**liabilities of current and former owners of environmentally hazardous**

**sites).**  These costs are associated with environmental contamination in

and around a now-defunct paper mill, of which both Plaintiff and Defendant

are former owners.  **Complaint,** *supra*, **¶¶ 8, 16, 21.**  The complaint

requests both monetary and declarative relief.  *Id.* **at 15.**

Court-sanctioned discovery has not yet begun in this case.  ***See***

**LCvR 16.1(F) ("While the parties may engage in consensual discovery**

**at any time, Court enforceable discovery does not commence until**

**issues have joined <u>and</u> a Scheduling Order is entered."); *see also id.*
16.1(D) ("For the limited purpose of these Local Civil Rules, 'joinder
of the issues' occurs when the final answer to a complaint . . . has
been filed, or the time for doing so has expired.").** Indeed, once the

complaint was filed, proceedings came to a temporary halt, at the parties'

request. **Order, filed June 18, 2008 (delaying Defendant's obligation to
answer or otherwise plead until 20 days after the Court rules on
summary judgment in Case No. 1:06CV367); Motion for Extension of
Time to Answer or Otherwise Plead, filed June 16, 2008, at 4
(indicating that both parties agree to this stay).**

Nonetheless, the unusual circumstances of this case have prompted

the parties to begin evidence collection early. The mill at the heart of this

lawsuit is located in Pisgah Forest, North Carolina. Its property, which

includes several hundred acres and at least 75 buildings, has been slowly

falling into ruin since 2002, when financial problems caused its operations

to shut down. **Exhibit K, Declaration of Jack S. Garren, *attached to*
Motion for Discovery Conference, filed July 1, 2008, ¶¶ 7, 8.** According

to the instant motion, documents pertinent to the present litigation are

scattered throughout the mill campus, many of them strewn around in

buildings that are unsafe to enter[2] and thus effectively inaccessible.

**Motion for Discovery Conference,** *supra,* **¶¶ 17, 18.**  Of those

documents that can actually be reached, many have deteriorated due to

poor conditions including roof leaks.  *Id.* **¶ 18.**

As a result of these circumstances, the discovery process in this

case promises to be particularly arduous.  To complicate matters further,

on June 6, 2008, Davidson River Village (DRV), the current owner of the

mill property, notified Plaintiff and Defendant of its plans to demolish the

mill's buildings as part of a massive cleanup effort.[3]  *Id.* **¶ 13.**  DRV noted

that, although many documents would be destroyed in the course of the

demolition, DRV would maintain custody of "'certain environmental

documents, filter plant operational documents, and plant drawings.'"  *Id.* **¶**

**14 (quoting Exhibit M, Letter from Samantha R. Corson,** *attached to*

**Motion for Discovery Conference,** *supra,* **at 1).**  As to all other

_____

[2] According to the instant motion, "[s]nakes, spiders, owls, bats, and rodents occupy many of the buildings at the Mill.  Some documents are located in buildings where there is visible asbestos, where ceiling tiles are on the floor, and where there are large holes in the floor[.]"  **Motion for Discovery Conference,** *supra,* **¶ 18 (citation omitted).**

[3] This demolition is necessary in order to clean up the environmental conditions at the mill and ready the site for redevelopment.  *Id.* **¶ 12.**

documents located at the site, DRV indicated that Plaintiff and Defendant could visit the site to retrieve them until July 1, 2008, at which point demolition was scheduled to begin. *Id.* ¶ **15.**

Representatives from Plaintiff visited the site on June 16, 17, 18, and 24. *Id.* ¶ **20.** According to the instant motion, "Glatfelter representatives – taking appropriate safety precautions including wearing hard hats, closed-toed or steel-toed shoes, and gloves and carrying heavy-duty flashlights – reviewed documents in the 23 buildings most likely to have relevant documents or likely to lead to the discovery of admissible evidence." *Id.* With DRV's consent, Plaintiff removed the documents it gleaned from its search and placed them in a room at the mill's main office building. *Id.* ¶ **21.** This building, according to Plaintiff, is scheduled to be demolished "several months from now." *Id.*

Defendant has apparently not visited the mill site since its receipt of DRV's letter in June 2008. Nonetheless, Defendant claims that Plaintiff "must treat all documents at the Mill as potentially relevant until it knows what is in those documents and decides what issues are relevant to its CERCLA claims." **Response to Motion for Discovery Conference,** *supra***, at 13.**

The parties represent that they have been unable to resolve their dispute on their own, and they now request guidance from the undersigned.

## II.  ANALYSIS

As an initial matter, the Court notes that it is not ordinarily in the practice of refereeing discovery squabbles prior to the joinder of the issues. *See* **LCvR 16.1(D) & (F).**  Here, however, the undersigned recognizes that the imminent demolition of the relevant mill buildings has given rise to unusual expediencies.  As a result, the Court will directly address the current dispute, although it will dispense with a formal hearing or conference as the parties request.

It appears to the undersigned that Defendant is taking a self-contradictory position.  On one hand, Defendant states, "[I]t is Glatfelter's responsibility, not Olin's, to decide what documents need to be preserved, particularly because Glatfelter either cannot or will not clarify the scope of its CERCLA action."  **Response to Motion for Discovery Conference,** *supra***, at 2.**  On the other hand, Defendant also states: "Allowing the destruction of documents in approximately 70% of the buildings at the site

without ever reviewing them and without even knowing the issues relevant to its CERCLA case does not meet Glatfelter's duty to preserve relevant documents." *Id.* **at 12.** In other words, Defendant is acknowledging that it is Plaintiff's job to preserve all necessary documents, while at the same time implying that it does not trust Plaintiff to do so.

As far as the Court can tell, Defendant has no reason to suspect that Plaintiff is exercising bad faith in meeting its obligation to obtain and preserve all necessary documents at the mill site which it can reasonably be expected to access – by, for example, collecting documents that favor Plaintiff's position and "conveniently overlooking" documents favorable to Defendant. Indeed, such bad faith actions would violate numerous rules of professional conduct. *See, e.g.*, **N. C. R. Prof'l Responsibility 3.4(a) (providing that lawyers shall not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.").** Throughout the various lawsuits involving this mill, both parties have thus far exhibited exemplary professionalism and cooperation, and the Court fully expects this pattern to continue.

As to the documents that remain scattered throughout the mill campus, the burden is indeed on Plaintiff to obtain and preserve – to the extent possible – such documents as are necessary to the instant lawsuit. Plaintiff appears to have satisfied itself that it has fulfilled its duty in this regard.  At this point, the Court is not in a position to second-guess Plaintiff's judgment.

As to those documents which Plaintiff has seen fit to collect and store in the mill's main office building, the undersigned agrees with Defendant that these should be preserved for purposes of formal, Court-sanctioned discovery, should this lawsuit proceed to that point.  Plaintiff, must, therefore, take the necessary steps to remove these documents from their temporary storage at the mill site and keep them somewhere more permanent where they can be later utilized by the parties and the Court, if needed.

### III.  ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for a discovery conference is hereby **DENIED**.[4]

**IT IS FURTHER ORDERED** that Plaintiff shall take steps to safeguard from demolition those documents it has already gleaned from its forays into the mill campus.  Any other pertinent documents which Plaintiff may uncover in the future, shall also be similarly safeguarded.

Signed: August 25, 2008

Lacy H. Thornburg
United States District Judge

---

[4] This ruling shall not affect the parties' right to request a formal initial pretrial conference at a later date, should they wish, in accordance with Local Rule of Civil Procedure 16.1(G).